UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | ) Case No. 2:16-cr-20065-SLD-EIL |
| | ) |
| MICHAEL BAKER, | ) |
| | ) |
| Defendant-Petitioner. | ) |

ORDER

Before the Court are Defendant-Petitioner Michael Baker's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se 2255 Motion"), ECF No. 27, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Counseled 2255 Motion"), ECF No. 30, and counseled motion for a status conference, ECF No. 34.  For the reasons that follow, the § 2255 motions are DENIED, and the motion for a status conference is MOOT.

BACKGROUND

In September 2016, a grand jury indicted Baker on one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  Indictment 1–2, ECF No. 1. Assistant Federal Public Defender Elisabeth Pollock was appointed to represent Baker.  *See* Sept. 13, 2016 Min. Entry.  Baker filed a motion asking United States District Judge Colin Bruce, who was then presiding over the case, to recuse under 28 U.S.C. § 455(a) and § 455(b)(3) on the basis that Judge Bruce was serving in a supervisory capacity for the United States Attorney's Office ("USAO") for the Central District of Illinois when Baker was sentenced in a previous case prosecuted by that office.  Mot. Recuse 1–2, ECF No. 7.  The prior conviction would increase the mandatory minimum if Baker were convicted in the 2016 case.  *Id.* at 2.  Moreover, the 2016

1

case arose out of a cell phone that was confiscated because Baker was on supervised release in the earlier case. *Id.* Baker argued that "the prior conviction (over which [Judge Bruce] had supervisory authority) arguably laid the groundwork for the current case, in that no investigation into [Baker's] current alleged misconduct could have taken place but for the term of supervised release imposed upon him" in the earlier case and, accordingly, Judge Bruce was required to recuse himself. *Id.* at 7. Judge Bruce denied this motion via text order, explaining that he could not "remember any participation in past prosecutions" of Baker and that he had "not had any participation in the current prosecution which consist[ed] of new charges, wholly unrelated to those brought against [Baker] in the past." Oct. 18, 2016 Text Order.

Baker entered a plea of guilty to the charge against him without a plea agreement. July 27, 2017 Min. Entry. The plea was accepted by Judge Bruce on August 11, 2017. Order Approving Magistrate Judge Recommendation, ECF No. 14.

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of sentencing. PSR, ECF No. 18. USPO indicated that Baker's base offense level was 18, *id.* ¶ 19, and that he should be assessed additional levels for possessing material of a minor who had not attained the age of 12, *id.* ¶ 20, engaging in a pattern of activity involving sexual abuse, *id.* ¶ 21, using a computer, *id.* ¶ 22, and possessing 4,350 images of child pornography, *id.* ¶ 23. After reductions for acceptance of responsibility, USPO listed Baker's total offense level as 29. *Id.* ¶¶ 29–31. With a criminal history category of IV, *id* ¶ 38, his Sentencing Guidelines range for imprisonment was listed as 121 to 151 months, *id.* ¶ 65. Baker was subject to a ten-year minimum term of imprisonment because he had a prior conviction under 18 U.S.C. § 2423(b)(1). *See* 18 U.S.C. § 2252A(b)(2) (providing a ten-year statutory minimum and a twenty-year statutory maximum if a defendant who commits an offense under

2

§ 2252A(a)(5) has a prior conviction under chapter 117 of title 18); 2006 Case Judgment 1, *United States v. Baker*, No. 2:06-cr-20043-JES-EIL (C.D. Ill. Apr. 23, 2007) (Doc. 12) (indicating that Baker pleaded guilty to engaging in interstate travel for the purpose of engaging in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b)(1)). He was subject to a mandatory minimum five-year term of supervised release up to a life term of supervised release. PSR ¶ 67 (citing 18 U.S.C. § 3583(k)). Baker did not object to the PSR. *Id.* at 20.

The sentencing hearing was held on December 8, 2017. Dec. 8, 2017 Min. Entry. Judge Bruce said that he would not take into consideration the two-level enhancement for use of a computer. *See* Sentencing Hr'g Tr. 9:25–10:3, ECF No. 29; *see id.* at 14:6–16. The Government recommended a sentence of 151 months of imprisonment, the high end of the Guidelines range, and supervised release for the rest of Baker's life. *Id.* at 5:10–12. Baker recommended a sentence of 120 months of imprisonment (the mandatory minimum), *id.* at 10:20–24, and ten or fifteen years of supervised release, *id.* at 11:11–13. Judge Bruce noted that the type of child pornography involved in this case was "by no means the worst that ha[d] been shown in th[e] courtroom." *Id.* at 14:1–4. But he also noted that Baker had "already been incarcerated for conduct not too dissimilar from the type of conduct involved in this case," *id.* at 15:6–8, and that Baker had received sex offender treatment yet engaged in similar conduct again, *id.* at 15:19–16:4. Judge Bruce decided that a sentence above the mandatory minimum was necessary but not up to 151 months, as suggested by the Government. *Id.* at 17:25–18:4. Accordingly, he sentenced Baker to 132 months of imprisonment and a twenty-year term of supervised release. *Id.* at 18:13–21. Judgment was entered December 12, 2017. Judgment 1, ECF No. 21. Baker did not appeal.

In April 2020, Baker filed the Pro Se 2255 Motion, raising four claims: 1) that Judge Bruce should have recused himself from Baker's case; 2) that Judge Bruce was actually biased against criminal defendants including Baker; 3) that 18 U.S.C. § 3583(k), under which Baker was sentenced to 20 years of supervised release, is unconstitutional; and 4) that the Federal Public Defender's office ("FPD") provided ineffective assistance of counsel by misleading him about tolling agreements for claims based on Judge Bruce's misconduct.  Pro Se 2255 Mot. 4–8, 12.[1]  The claims about Judge Bruce are based on *ex parte* communications between Judge Bruce and the USAO that came to light in 2018.  *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications).

Judge Bruce recused himself from hearing Baker's motion, and the matter was reassigned to this Court.  Apr. 21, 2020 Text Order of Recusal.  The Court appointed counsel to represent Baker with respect to the § 2255 motion.  Counsel filed the Counseled 2255 Motion, "which is intended to supplement" the Pro Se 2255 Motion, on September 24, 2020.  Counseled 2255 Mot. 1–2.  The Counseled 2255 Motion asserts the following claims: 1) that Judge Bruce was actually biased against Baker and presiding over case violated Baker's due process rights; 2) that Judge Bruce should have recused himself under 28 U.S.C. § 455(a) due to an appearance of bias; and 3) that the FPD provided ineffective assistance of counsel in violation of the Sixth Amendment.  *Id.* at 12–13, 23–24.

The Government filed its response in February 2021.  Resp. 1, ECF No. 33.  It argues that Baker cannot show that Judge Bruce was biased against him, that the § 455(a) claim is "not a proper basis for relief in a § 2255 proceeding," that Baker waived and procedurally defaulted the

---

[1] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

§ 455(a) claim by failing to raise it on appeal, that the § 455(a) claim is untimely, that Baker's ineffective assistance of counsel claims do not warrant relief, and that Baker's claim that § 3583(k) is unconstitutional is undeveloped, waived, and meritless. *Id.* at 23–25 & n.6.

No reply was filed, though Baker later filed a motion for a status conference.

## DISCUSSION

### I. Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it. 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

### II. Analysis

The Court addresses each of Baker's claims separately along with any defenses specific to those claims.

#### A. Due Process Claim

The due process claim is based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, months after Baker was sentenced. These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S.*

5

*Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf). Baker argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights. *See* Counseled 2255 Mot. 12–13.

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)). A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here. In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case. It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks

omitted). Baker relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically or any evidence showing that the communications impacted his case. *See* Counseled 2255 Mot. 4–15.[2]

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority). Baker points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him. Instead, he is relying on the *ex parte* communications alone. *See* Counseled 2255 Mot. 14–16. The Court thus finds that Baker has failed to show either actual bias or a risk of bias so high that it violates due process. The due process claim is denied.

---

[2] Baker asserts that "none of the emails are directed specifically at" him. Counseled 2255 Mot. 15. But the Government identifies one *ex parte* email related to Baker's case. *See* Resp. 17 (citing Apr. 5 & 6, 2017 Emails Between Staci Klayer & Judge Bruce, *United States v. Nixon*, No. 2:15-cr-20057-JES-JEH (C.D. Ill. Oct. 25, 2018) (Doc. 173-9)). These emails indicate that Judge Bruce asked a USAO paralegal, Staci Klayer, to determine if upcoming trials, including one scheduled for Baker's case, were firm trials or if the defendants would be pleading guilty and to let the prosecutors on the upcoming cases know that Judge Bruce would not grant continuances in those cases because of an ongoing high-profile case. *See, e.g.*, Apr. 5 & 6, 2017 Emails Between Staci Klayer & Judge Bruce 3. Klayer represented that Baker would not be going to trial. *Id.* at 2. Nothing about these emails suggests that Judge Bruce was biased against Baker.

B.  Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Baker argues in the alternative to his due process claim that the *ex parte* communications demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28 U.S.C. § 455(a). *See* Counseled 2255 Mot. 12–13. The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should have recused himself from Baker's case under § 455(a).[3] Instead, it argues that this statutory claim is procedurally defaulted and waived, untimely, and not cognizable on § 2255 review. Resp. 39–52.

1.  Waiver and Procedural Default

The Government argues that because Baker sought Judge Bruce's recusal under § 455(a) during his initial proceedings and failed to appeal that ruling, he has waived any § 455(a) claim. *Id.* at 45–46. It also argues that Baker procedurally defaulted the claim by failing to raise it on appeal. *Id.* at 46–47. These appear to amount to the same argument: because he failed to raise a § 455(a) appearance of bias claim on appeal (and, in fact, did not appeal), Baker forfeited his ability to bring it on a motion under § 2255.

"A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). With respect to both waiver and procedural default, the Government argues that the fact that the emails Baker relies on now were not available at the time he could have appealed does not excuse his failure to raise a § 455(a) claim on appeal. Resp. 45–47. But it provides no case law

---

[3] To the Court's knowledge, the Government has conceded an appearance of partiality—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far. *See, e.g., Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

support for this argument. The argument is underdeveloped, so the Court declines to find that Baker either waived or procedurally defaulted his § 455(a) claim based on the *ex parte* communications.

### 2. Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Baker acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling of the statute of limitations because Federal Public Defender Thomas Patton made a legal error and failed to preserve his right to raise a claim based on Judge Bruce's failure to recuse from his case. Counseled 2255 Mot. 2–3.[4] The Government responds that Baker is not entitled to

---

[4] The Court cannot ascertain whether Baker contends his motion is timely under § 2255(f)(2), (3), or (4). He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4). Counseled 2255 Mot. 2. But he makes no argument that any of these provisions apply. Instead, he goes on to argue for equitable tolling, *id.* at 2–3, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)). In any case, the Court finds that Baker's motion is not timely under § 2255(f)(2), (3), or (4). Because Baker does not allege that any government action created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply. And because Baker does not rely on a new right recognized by the Supreme Court, § 2255(f)(3) does not apply. The Government argues that even if

equitable tolling because there is "no evidence showing that he exercised diligence in preserving the appearance of bias claim." Resp. 52.

The time limits set forth in § 2255(f) are subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255). A petitioner is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation marks omitted). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Baker barely develops an argument that he has met both elements of the *Holland* test. He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse. *See* Counseled 2255 Mot. 2–3 (quotation marks omitted). He does not acknowledge that in *Holland*, the Supreme Court held that "a garden

---

§ 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more than a year after Baker could have learned of Judge Bruce's improper communications. Resp. 48–49 & n.13. The Court agrees, though it declines to find on the record before it that Baker should have been aware of the communications in August or October 2018, as the Government argues, *see id.* at 48–49. The Government provided a letter from Pollock to Baker dated November 21, 2018 informing him of Judge Bruce's communications. *See* Nov. 21, 2018 Letter, Resp. Ex. B, ECF No. 33-2 at 3–4. It also provided a letter dated November 26, 2018 from Baker indicating that he received Pollock's letter. Nov. 26, 2018 Letter, Resp. Ex. B, ECF No. 33-2 at 5. These letters demonstrate that Baker was aware of Judge Bruce's communications in late 2018, but he did not file his Pro Se 2255 Motion until April 2020, more than one year later.

variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at 651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case. In *Holland*, the Supreme Court found that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Id.* at 652. The Court remanded for further consideration because "no lower court ha[d] yet considered in detail the facts of th[e] case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief." *Id.* at 653–54. Baker points to no facts—and cites no further cases—to support his argument that Patton's legal mistake would go beyond mere negligence and support a finding of extraordinary circumstances warranting equitable tolling. *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal advice generally does not by itself trigger equitable tolling."). Moreover, Baker merely states in a conclusory fashion that he "diligently filed his *pro se* filing upon learning of the mistake." Counseled 2255 Mot. 3. But "mere conclusory allegations of diligence are insufficient." *Mayberry*, 904 F.3d at 531.

      The Court concludes that Baker has failed to establish his entitlement to equitable tolling, so it finds his § 455(a) claim untimely.

### 3. Cognizability

Even if Baker's § 455(a) claim were not untimely, it would not warrant relief. Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346. The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[5]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[6] In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted). It held that "[a]bsent that level of severity, the claim of an appearance of impropriety

---

[5] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[6] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)). But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

is not cognizable under 28 U.S.C. § 2255." *Id.* It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.* And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[7]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality." It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a). *Liljeberg*, 486 U.S. at 858, 863. Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances." *Id.* at 863–64 (quotation marks omitted). The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864. The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental

---

[7] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear. The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted). The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief. *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255."). It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so." *Id.* at 82. The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

13

defect' that would justify vacating an otherwise lawful sentence under section 2255." *Hardy*, 878 F.2d at 97. It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255 because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted). Here, the alleged error does not rise to that level. As noted above, Baker has not established a due process violation and has no evidence that any of Judge Bruce's communications or relationships with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the defendant did not object and no prejudice resulted because the case "lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))). And any violation of

14

§ 455(a) would have no bearing on Baker's guilt or innocence. *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete miscarriage of justice' standard required of nonconstitutional violations of federal law in order to be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)). Moreover, Baker was sentenced within his Guidelines range.

   The Court does not find that *Liljeberg* requires a different result. *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances. *See Liljeberg*, 486 U.S. at 858. And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885. The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless. It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a

15

difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Baker has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, does not warrant relief under § 2255.

C. Ineffective Assistance of Counsel Claims

Baker asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways. *See* Counseled 2255 Mot. 23–24. First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's *ex parte* communications] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 24. And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of bias claims. *Id.*

With respect to the appeal claim, the Government argues that "[i]t is disingenuous to suggest, with the distorting effect of hindsight, that counsel should have appealed and alleged bias in this context" where Baker "had just received a lower-half-of-the-guidelines sentence, and the *ex parte* emails had not surfaced as yet." Resp. 57. The Court finds the last point persuasive—Baker's right to appeal expired in December 2017, months before Judge Bruce's communications came to light. Baker's counsel could not have performed deficiently by failing to raise an argument based on facts of which she was unaware.

The Government makes a number of arguments against the tolling agreement claim, *id.* at 57–62, but the Court need only address one. Baker had no right to counsel beyond his direct appeal. *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no

right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)). Thus, any deficient performance with respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

### D. Section 3583(k)

In his Pro Se 2255 Motion, Baker suggests that 18 U.S.C. § 3583(k)—the statute under which he was sentenced to twenty years of supervised release—is unconstitutional. Pro Se 2255 Mot. 6. It is unclear whether he is challenging the statute on its face or as it is applied to him. *Id.* He indicates that the twenty years of supervised release he was sentenced to "is an unrealistic term to comply with many of the terms of supervised release." *Id.* The Government argues that this claim is undeveloped, as there "is no cited support or argument for this claim." Resp. 23 n.6. It also argues that Baker has waived this claim by failing to challenge the length or reasonableness of his sentence on appeal and that it "appears to be without merit." *Id.*

The Court agrees with the Government that there are several issues with this claim. First, the claim is undeveloped. Baker does not identify how he believes the statute is unconstitutional or even what part of the Constitution he believes was violated. "Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009). Second, this claim could have been raised on appeal but was not, so Baker has procedurally defaulted the claim, and he identifies no cause for his default.[8] *See Cross v. United States*, 892 F.3d 288, 294 (7th Cir. 2018) ("In general, habeas

---

[8] Baker argues that he "was unaware of any case concerning" § 3583(k) until recently. Pro Se 2255 Mot. 9. He does not identify any cases that support his argument or indicate whether the cases he is referring to were newly decided or he merely recently became aware of them. "A change in the law may constitute cause for a procedural default if it creates a claim that is so novel that its legal basis is not reasonably available to counsel." *Cross*, 892 F.3d at 295 (quotation marks omitted). Absent additional detail, however, the Court cannot find that Baker's claim is based on a change in the law.

corpus petitioners may not raise any issue that they might have presented on direct appeal.  A petitioner may, however, overcome procedural default by showing cause for the default and actual prejudice or that failure to consider the defaulted claim will result in a fundamental miscarriage of justice." (citations and quotation marks omitted)).

To the extent that Baker is relying on *United States v. Haymond*, 139 S. Ct. 2369, (2019), in which the Supreme Court found that § 3583(k) was unconstitutional as applied, Baker's case is distinguishable.  In *Haymond*, the defendant had been found guilty by a jury of possessing child pornography and was subject to a term of imprisonment between zero and ten years under 18 U.S.C. § 2252(b)(2) and a term of supervised release between five years and life under § 3583(k).  *Id.* at 2373.  The district judge sentenced him to 38 months of imprisonment and ten years of supervised release.  *Id.*  The defendant completed his term of imprisonment and began serving his term of supervised release.  *Id.* at 2374.  While on supervised release, the government conducted an unannounced search of the defendant's computers and cellphone and found images of suspected child pornography.  *Id.*  "Based on that discovery, the government sought to revoke [the defendant's] supervised release and secure a new and additional prison sentence." *Id.*  The district judge found, by a preponderance of the evidence, that the defendant knowingly downloaded and possessed thirteen images of child pornography.  *Id.*  Pursuant to 18 U.S.C. § 3583(k), the judge was required to impose an "additional prison term of at least five years and up to life without regard to the length of the prison term authorized for the defendant's initial crime of conviction." *Haymond*, 139 S. Ct. at 2374.  The Supreme Court found that this part of § 3583(k), under which facts found by a judge increased the legally prescribed range of allowable sentences, violated the Fifth and Sixth Amendments.  *Id.* at 2378–79; *id.* at 2383 ("As we have emphasized, our decision is limited to § 3583(k) . . . and the . . . problem raised by its 5-

18

year mandatory minimum term of imprisonment."). Baker's case does not involve this part of § 3583(k). He was sentenced to an initial term of supervised release under § 3583(k), not a mandatory minimum term of reimprisonment for a supervised release revocation. The § 3583(k) claim is denied.

### III. Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Baker has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Defendant-Petitioner Michael Baker's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 27, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 30, are DENIED. The counseled motion for a status conference, ECF No. 34, is MOOT in light of this Order. The Clerk is directed to enter judgment and close the accompanying civil case, 2:20-cv-02097-SLD.

Entered this 29th day of September, 2023.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE